BARRY J. PORTMAN
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant LOPEZ-MENERA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ABEL LOPEZ-MENERA, <br><br> Defendant. | No. CR-07-0653 SI <br><br> **DEFENDANT'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDICTMENT** <br><br> Date: December 20, 2007 <br> Time: 10:00 a.m. <br> Court: Hon. Susan Illston |

TO: UNITED STATES OF AMERICA, PLAINTIFF; AND SCOTT N. SCHOOLS, UNITED STATES ATTORNEY; AND TAREK HELOU, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on December 20, 2006, at 10:00 a.m., before the Honorable Susan Illston, defendant Abel Lopez-Menera (hereinafter "Mr. Lopez-Menera") will move this Court to dismiss the indictment on grounds that the one prior deportation order at issue in this case was entered after constitutionally defective removal proceedings; therefore, it cannot serve as a predicate for a prosecution under 8 U.S.C. § 1326 in light of the Fifth Amendment.

DEF. MOT. TO DISM. INDICT.
No CR-07-0653 SI

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Mr. Lopez-Menera is charged in a one count indictment with violation of 8 U.S.C. § 1326, illegal reentry after deportation. The indictment against Mr. Lopez-Menera should be dismissed on the grounds that his deportation in 1998, as a matter of law, cannot constitute the prior lawful deportation order necessary for the government to establish the deportation element of a violation of 8 U.S.C. § 1326. At the time of the deportation proceedings, Immigration Judge Michael Leary (hereinafter, "IJ Leary") overtly mis-advised Mr. Lopez-Menera that he had no possibility of relief from deportation when the contrary was true. Through this error, IJ Leary denied Mr. Lopez-Menera due process of law, resulting in the defendant's unconstitutional deportation. Mr. Lopez-Menera suffered prejudice from his error because he was in fact eligible for relief from deportation and was nonetheless ordered removed from the United States. Under these circumstances, the underlying deportation order cannot serve as a predicate for a prosecution for illegal reentry. As the aforementioned deportation was Mr. Lopez-Menera's sole deportation or removal from the United States, this case presents an unusual situation requiring that the indictment be dismissed.

## STATEMENT OF FACTS

**A.     Mr. Lopez-Menera's Background**

Mr. Lopez-Menera entered the United States in approximately October, 1989, at the age of 19. *See* Declaration of Abel Lopez-Menera, attached to Declaration of Elizabeth Falk Authenticating Documents (hereinafter, "Falk Auth. Dec") as Exhibit L at ¶ 2. From the time he arrived in the United States, Mr. Lopez-Menera worked in the fields, in construction and landscaping, and as a janitor. *Id.* at ¶ 3, 5. He met his common-law wife, Rosa Sanchez (who is a United States citizen), while in the United States. *Id.* at ¶ 3. While living together, they had three children who are all United States citizens; Bessie Sanchez-Lopez, now age 15; Abel Sanchez-Lopez, now age 13, and Jose Andres Sanchez-Lopez, age 11. *Id.* Prior to Mr. Lopez-Menera's incarceration and deportation,

DEF. MOT. TO DISM. INDICT.
No CR-07-0653 SI                                                    1

he was residing with his common law wife and children and worked a night job as a janitor to support them. *Id.* This information is also verified by a family friend, Sally Dietz, who has known Mr. Lopez-Menera and his family for many years. *See* Declaration of Sally Dietz, attached to Falk Auth. Dec as Exhibit M at ¶ 2-4, 6 (indicating that Ms. Dietz knows the children, recognized the fact that Mr. Lopez-Menera was working hard to support his family, and was working a night job as a janitor when he was arrested in 1997).

Unfortunately, Mr. Lopez-Menera began to run into trouble with the law shortly after his second son was born. *See* Dietz Declaration, Exhibit M, at ¶ 5. On August 12, 1997, Mr. Lopez-Menera suffered a conviction under that sent him to state prison for two years; Driving Under the Influence ("DUI") pursuant to California Vehicle Code § 23152(b). For this offense, Mr. Lopez-Menera was sentenced to two years in prison. *See* Judgment and Commitment Order, attached to Falk Auth. Dec. at Exhibit A. The two year sentence was an enhancement based on Mr. Lopez-Menera's prior convictions; one June 2, 1993 conviction for Reckless Driving under Cal. Vehicle Code § 23103, as well as a previous DUI on May 28, 1993. *See* CLETS printout of Mr. Lopez-Menera's prior convictions, attached to Falk Auth. Dec. as Exhibit B (documenting priors). The two-year sentencing enhancement was applied pursuant to Cal. Veh. Code § 23566 (formerly Cal. Veh. Code § 23175).

**B.  Mr. Lopez-Menera's Removal From the United States**

On December 22, 1997, the then Immigration and Naturalization Service ("INS")(now "ICE") issued a Warrant for Arrest of Alien for Mr. Lopez-Menera. *See* Warrant and Final Administrative Removal Order, attached to Falk Auth. Dec. as Exhibit C. On that same day, INS issued a final administrative removal order against Mr. Lopez-Menera requiring his removal from the United States. *Id.* The Final Removal Order, which issued under Section 238(b) of the Immigration and Nationality Act, provided for Mr. Lopez-Menera's immediate removal on the grounds that he had been convicted of an aggravated felony. *Id.* Under this section of the Act, undocumented aliens

with aggravated felony convictions may permissibly be deported without a hearing before an Immigration Judge.

Once again, on March 4, 1998, the INS issued a Notice of Intent to Issue a Final Administrative Removal Order for Mr. Lopez-Menera. *See* Notice, attached to the Falk Auth. Dec. at Exhibit D. This order specifically charged Mr. Lopez-Menera with being an aggravated felon on the basis of his August 12, 1997 DUI with Priors conviction. *Id*. This Notice was incorrect as a matter of law, as Cal. Veh. Code Section 23152(b) is not an aggravated felony, even if an individual has suffered a DUI after prior convictions. *See United States v. Portillo-Mendoza*, 273 F.3d 1224, 1226 (9th Cir. 2001)(DUI conviction with priors in violation of Cal. Veh. Code §§ 23152 and 23550 is not an aggravated felony). Despite this fact, on June 8, 1998, the INS issued a further Notice of Intent to Issue Final Administrative Removal Order against Mr. Lopez-Menera, once again wrongly stating that his August 12, 1997 conviction was an aggravated felony. *See* Notice, attached to Falk Auth. Dec. as Exhibit E.

Mr. Lopez-Menera was placed in immigration proceedings near the end of his custodial term on the DUI charge. The record is clear that the INS had full knowledge of Mr. Lopez-Menera's impending release date of October 16, 1998, and placed him in proceedings approximately three weeks prior to that day. *See* Record of Deportable Alien (signed September 17, 1998), attached to the Falk Auth. Dec. at Exhibit F (stating that Mr. Lopez-Menera's release date was October 16, 1998). He was issued a Notice to Appear dated September 18, 1998 for immigration proceedings set to occur on September 24, 1998. Mr. Lopez-Menera signed the form indicating that he wanted a hearing. *See* Notice to Appear and Acknowledgment (signed September 21, 1998), attached to the Falk Auth. Dec. at Exhibit G. The Notice to Appear did not indicate that Mr. Lopez-Menera was an aggravated felon. *Id.*

On September 24, 1998, Mr. Lopez-Menera was placed in removal proceedings before IJ Leary with eighteen other men. *See* Transcription of Immigration Hearing, attached to the

DEF. MOT. TO DISM. INDICT.
No CR-07-0653 SI                3

Declaration of Elizabeth M. Falk attaching Transcription of Audio Recording and Audio File (filed 11/30/2007) at Exhibit A. In a global statement to all respondents during the hearing, IJ Leary assured the respondents that he would conduct an inquiry with each respondent to advise them of any possible relief from deportation available. *Id.* at 5:47. Despite this assurance, IJ Leary also stated to all the respondents, as a group, "**none of you will be eligible for voluntary departure, so that's not going to be at issue at any of these hearing.**" *Id.* at 9:14.

In connection with Mr. Lopez-Menera's individual hearing, the IJ reviewed Mr. Lopez-Menera's background with him, and determined that he had a family in the United States that included three U.S. citizen children. *Id.* at 1:05:06. The IJ found Mr. Lopez-Menera removable as an undocumented alien. *Id.* Although he did not specifically accuse Mr. Lopez-Menera of being an aggravated felon, the IJ asked Mr. Lopez-Menera what he was incarcerated for. Mr. Lopez-Menera erroneously responded "possession of drugs" and "driving drunk". The IJ then erroneously responded "Sir in your case there is no relief. Because of the drugs. There's no claim to citizenship. I'm going to have to order your removal from the United States to Mexico." *Id.*

During the hearing, the INS attorney took notes related to Mr. Lopez-Menera's case. *See* Falk Auth. Dec. at Exhibit H. These notes are dated September 24, 1998, and list Mr. Lopez-Menera's name and A-file number. *Id.* On the notes, the INS official indicates that Mr. Lopez-Menera has "3 USC child" and "agg fel. DUI 2 years." *Id.* That same day, Mr. Lopez-Menera was ordered removed from the United States and further ordered excluded for five years. *See* Order of Immigration Judge, Falk Auth. Dec. at Exhibit I. He was physically deported on October 16, 1998, twenty-two days after he had his deportation hearing. *Id*. at Exhibit K.

There is no indication in Mr. Lopez-Menera's file that at any time, he waived his right to apply for prehearing voluntary departure. To the contrary, Mr. Lopez-Menera's INS Deportation Case Checklist indicates that no one ever discussed voluntary departure with Mr. Lopez-Menera. *See* Falk Auth. Dec. at Exhibit J (deportation checklist indicates no Voluntary Departure Notice was

DEF. MOT. TO DISM. INDICT.
No CR-07-0653 SI                                  4

ever provided to Mr. Lopez-Menera). Furthermore, Mr. Lopez-Menera attests that no INS official or Immigration Judge ever discussed the concept of prehearing voluntary departure with him, or explained that he was eligible for any relief from deportation. *See* Lopez-Menera Dec., attached to Falk Auth. Dec. as Exhibit L, at ¶¶ 7-8.

C.  **Legal Flaws in the Removal Proceedings**

In fact, at the time of the proceeding before IJ Leary on September 24, 1998, Mr. Lopez-Menera was eligible for prehearing voluntary departure under 8 U.S.C. 1229c(a)(1) for a period of 120 days. *See* Declaration of Angela M. Bean, Esq.("Bean Dec.,"), attached to Falk Auth. Dec. as Exhibit N. at ¶4. At the time of his hearing, Mr. Lopez-Menera met all the requirements for prehearing voluntary departure. First, in contrast to the findings of the INS, Mr. Lopez-Menera had never been convicted of an aggravated felony at the time of his deportation. Second, he had never been previously granted voluntary departure. Third, Mr. Lopez-Menera could have financed his way out of the United States. Although he came from a poor family with a number of children, a family friend, Sally Dietz, would have assisted Mr. Lopez-Menera with transportation costs and/or the cost of bail. *See* Dietz Dec., attached to the Falk Auth. Dec as Exhibit M, at §7. According to expert immigration law witness Angela Bean, Mr. Lopez-Menera was a candidate for voluntary departure, and he should have been so advised by the IJ or another immigration official. *See* Bean Dec. at §6-8; *see also* 8 U.S.C. §1229c (aliens not eligible for voluntary departure). The IJ was thus incorrect when he categorically excluded the possibility of relief from deportation for Mr. Lopez-Menera.

**ARGUMENT**

I.  **MR. LOPEZ-MENERA WAS DENIED DUE PROCESS AT HIS DEPORTATION HEARING BECAUSE THE IJ FAILED TO ADVISE HIM OF HIS ELIGIBILITY FOR DISCRETIONARY RELIEF, BY WHICH HE WAS SUBSTANTIALLY PREJUDICED, RESULTING IN A CONSTITUTIONALLY FLAWED DEPORTATION ORDER**

A prior deportation order cannot serve as a predicate for a subsequent prosecution under 8 U.S.C. § 1326 when the deportation proceedings giving rise to the order were fundamentally flawed.

*See United States v. Mendoza-Lopez*, 481 U.S. 828, 837 (1987). If a defendant succeeds in a collateral attack on the predicate deportation order, the indictment against him must be dismissed. *See United States v. Andrade-Partida*, 110 F.Supp.2d 1260, 1272 (N.D. Cal. 2000). To prevail in a collateral attack on a prior deportation on grounds that the deportation proceedings were fundamentally flawed, the defendant must show that (1) he exhausted administrative remedies that were available to him; (2) the deportation proceedings at which the order was issued denied the opportunity for judicial review; (3) the entry of the order was fundamentally unfair. *See United States v. Pallares-Galan,* 359 F.3d 1088, 1095 (9th Cir. 2004)(citing 8 U.S.C. § 1326(d)). "An underlying removal order is 'fundamentally unfair' if (1) an alien's 'due process rights were violated by defects in the underlying deportation proceeding' and (2) 'he suffered prejudice as a result of the defects.'" *Id.* (citing *United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th Cir. 2000)). Here, Mr. Lopez-Menera's collateral challenge to his 1998 deportation order meets each of these three prongs.

**A.   The Entry of the Deportation Order Against Mr. Lopez-Menera was Fundamentally Unfair** (8 U.S.C. § 1326(d)(1))

   1.   Due Process

During a deportation hearing, the requirement that the IJ inform an alien of any apparent eligibility for relief from deportation and give the alien the opportunity to pursue that form of relief is "mandatory." *See United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (quoting *United States v. Arce-Hernandez*, 163 F.3d 559, 565 (9th Cir. 1998)). When an alien asks for relief, an erroneous determination by an IJ that the alien is statutorily ineligible for relief from deportation also constitutes a denial of due process.[1] Failure of the IJ to inform the defendant of his eligibility for a waiver of deportation in the underlying proceedings establishes a violation of due process in a

---

[1] *See United States v.Ubaldo-Figueroa,* 364 F.3d 1042, 1049-50 (9th Cir. 2004) (an inaccurate statement that an alien is ineligible for any relief constitutes a breach of the IJ's duty and a violation of due process).

DEF. MOT. TO DISM. INDICT.
No CR-07-0653 SI                                    6

collateral appeal in a case brought under Title 8 Section 1326. *See Arrieta*, 224 F.3d at 1079. The failure of the IJ to advise an alien of his eligibility for a waiver of deportation violates the alien's due process rights and "amount[s] to a complete deprivation of judicial review of the determination." *Mendoza-Lopez*, at 840. "Even if the alien's eligibility is not clearly disclosed in the record, the IJ has a duty to discuss discretionary relief with the alien so long as the record as a whole raises a reasonable possibility of eligibility of such relief." *Andrade-Partida*, 110 F.Supp.2d at 1268.

It is clear in this case that Mr. Lopez-Menera's due process rights were violated through the deportation process. Based on the documents in the record, Mr. Lopez-Menera was eligible for prehearing voluntary departure, pursuant to 8 U.S.C. § 1229(c)(1) on or before September 24, 1998; had he been granted that relief, he would not have been deported. *See* Bean Dec., Falk Auth. Dec. Exhibit N at ¶ 8. Both before and during his deportation hearing, immigration officials and IJ Leary failed to advise Mr. Lopez-Menera that he was eligible for voluntary departure for a period of 120 days, which was relief from deportation. Given the fact that the deportation hearing was less than a month from Mr. Lopez-Menera's release date, he could have met the requirement that he depart the United States within 120 days of the hearing. The IJ further violated Mr. Lopez-Menera's rights when he erroneously advised Mr. Lopez-Menera that "because of the drugs, there is no relief", which was untrue and impossible, given the fact that Mr. Lopez-Menera did not have any drug related convictions. It appears that by not actually reading the record of Mr. Lopez-Menera's convictions, the IJ erroneously believed that Mr. Lopez-Menera had been convicted of an aggravated felony, when in fact he had not. Finally, not only did the IJ fail to advise of eligibility for relief; he overtly *mis-advised* Mr. Lopez-Menera that he was not eligible for prehearing voluntary departure, when he, in fact, was eligible. This mis-advice violated Mr. Lopez-Menera's due process rights.

2. Prejudice

To satisfy a showing of prejudice, an "alien does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for

relief from deportation." *See Ubaldo-Figueroa*, 364 F.2d at 1050 (quoting *Arrieta*, 224 F.3d at 1079.) An alien can show prejudice by showing one plausible legal challenge to his removal order that he could have pursued had he known that he had the right to appeal. *Id.* Although the Ninth Circuit has not defined the term "plausible", "this standard would seem to encompass borderline cases, perhaps even where the equities are in equipoise. Stated differently, it seems fair to interpret this standard as granting defendants in illegal entry cases the benefit of the doubt, even if they have a borderline claim of prejudice, as long as they establish that their deportation proceeding was procedurally deficient." Wible, Brent S., *The Strange Afterlife of Section 212(c) Relief: Collateral Attacks on Deportation Orders in Prosecutions for Illegal Reentry After St. Cyr*, 19 Geo. Immigr. L.J. 455, 475 (Summer 2005). Under applicable law, Mr. Lopez-Menera **need not** show that absent the IJ's error, he actually would have been granted relief, or even that there was a reasonable probability that he would have been granted relief. *See United States v. Muro-Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001). A showing of plausible or possible granting of relief is sufficient.

Here, Mr. Lopez-Menera's circumstances in 1998 demonstrate that it was more than plausible that he would have obtained voluntary departure as of September 24, 1998 had he known about that form of relief and applied for it. *See* Bean Dec. at § 8. Mr. Lopez-Menera had the financial resources to finance his trip out of the United States, was not an aggravated felon and had not previously availed himself of voluntary departure. *See* Dietz Dec. at ¶ 7-8; *see also* Bean Dec., Ex. J at ¶ 4. His sentence was set to toll on October 16, 1998, which was within the 120 day mandatory departure period. Moreover, Mr. Lopez-Menera's declaration that he would have sought voluntary departure had he known about it is credible. *See* Lopez-Menera Dec., Exhibit L, at ¶7. In Mr. Lopez-Menera's case, voluntary departure would have been especially valuable since he could have returned to the United States to marry his common-law wife and continue to father three U.S. citizen children. A grant of voluntary departure would have preserved Mr. Lopez-Menera's ability to return to the United States legally. *See* Bean Dec. at ¶6-8. Mr. Lopez thus suffered substantial prejudice

since he met the requirements of voluntary departure and it is plausible that he would he have applied for and received voluntary departure had he been properly advised that he was eligible for it.

> **B.    As Mr. Lopez-Menera Was Mis-Advised by the IJ, His Waiver of Appeal was Not Knowing and Intelligent and he Was Denied the Opportunity for Judicial Review** (8 U.S.C. § 1326(d)(1) and (d)(2))
>
>> 1.    Because Mr. Lopez-Menera's Waiver of Appeal was Not Knowing and Intelligent, he is Deemed to Have Exhausted his Administrative Remedies

Although 8 U.S.C. § 1326(d)(1) requires that an alien exhaust all administrative remedies before a collateral attack will succeed, the exhaustion requirement "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process." *Ubaldo-Figueroa*, 364 F.3d at 1048 (citing *United States v. Muro-Inclan*, 249 F.3d 1180, 1183-84 (9th Cir. 2001)). The Due Process Clause requires that an alien's waiver of his right to appeal a deportation order be "considered and intelligent." *See id* at 1049*; see also Mendoza-Lopez*, 481 U.S. at 839.  An alien who is not advised of his rights cannot make a "considered and intelligent" waiver, and is thus not subject to the exhaustion of administrative remedies requirement of 8 U.S.C. § 1326(d). *See Ubaldo-Figueroa*, 364 F.3d at 1049-1050; *Pallares*, 359 F.3d at 1096 ("Where 'the record contains an inference that the petitioner is eligible for relief from deportation,' but the IJ fails to 'advise an alien of this possibility and give him an opportunity to develop the issue,' we do not consider an alien's waiver of his right to appeal his deportation order to be 'considered and intelligent.'")(citing *Muro-Inclan*, 249 F.3d at 1182)(remaining citations omitted.)  As such, under Ninth Circuit precedent, the undisputed failure of IJ Leary or any immigration official to correctly advise Mr. Lopez-Menera about prehearing voluntary departure or provide him an opportunity to apply excuses Mr. Lopez-Menera from the administrative remedies exhaustion requirement of his collateral attack under 8 U.S.C. § 1326(d)(1).

>> 2.    Mr. Lopez-Menera was Also Deprived of An Opportunity for Judicial Review

An immigration judge is obligated to advise an alien regarding apparent avenues for relief from deportation. *See, e.g., Duran v. INS*, 756 F.2d 1338, 1341-42 (9th Cir.1985) (citing 8 C.F.R. §

DEF. MOT. TO DISM. INDICT.
No CR-07-0653 SI                              9

242.17(a) (1984)). When the IJ fails to so advise, the Ninth Circuit has held that aliens are deprived a meaningful opportunity for judicial review. *See, e.g, Pallares-Galan*, 359 F.3d at 1098 ("For the same reasons [as those stated to find that Pallares' waiver of appeal was procedurally defective] we hold that Pallares was deprived of a meaningful opportunity for judicial review"); *see also Ubaldo-Figueroa*, 364 F.3d at 1050; (holding same); *see also Andrade-Partida*, 110 F. Supp at 1271 (finding that the IJ's failure to advise of section 212(c) relief deprived the alien of judicial review). Mr. Lopez-Menera thus meets the second prong of a collateral attack on his deportation proceeding.

**C.     Summary**

Because the IJ (1) failed to advise Mr. Lopez-Menera of his eligibility for prehearing voluntary departure, (2) affirmatively *misadvised* Mr. Lopez-Menera that he was not eligible for voluntarily departure, and (3) *misadvised* Mr. Lopez-Menera that "because of the drugs" he was ineligible for any relief from deportation, Mr. Lopez-Menera's due process rights were violated. Given that Mr. Lopez-Menera was eligible for prehearing voluntary departure and has demonstrated the financial ability, family support, and family ties that rendered him a plausible candidate for voluntary departure, he has demonstrated that he was prejudiced by IJ Leary's erroneous advice. Accordingly, Mr. Lopez-Menera's deportation proceedings were fundamentally flawed. Under Ninth Circuit precedent, the aforementioned circumstances excuse Mr. Lopez-Menera from the administrative exhaustion requirement. Under the same reasoning, Mr. Lopez-Menera was denied the opportunity for judicial review. Mr. Lopez-Menera thus successfully meets all three prongs of a collateral attack on the October 16, 1998 deportation that is a necessary element for his conviction under 8 U.S.C. § 1326. Given that the October 16, 1998 deportation is the only deportation Mr. Lopez-Menera has suffered, the United States cannot meet its burden of proof on an essential element of the charge under 8 U.S.C. § 1326. Accordingly, the indictment must be dismissed.

**CONCLUSION**

For the aforementioned reasons, Mr. Lopez-Menera respectfully requests this Court to dismiss the indictment in the instant case.

Dated: November 30, 2007

                              Respectfully submitted,
                              BARRY J. PORTMAN
                              Federal Public Defender

                              /S/

                              ELIZABETH M. FALK
                              Assistant Federal Public Defender