1  SCOTT N. SCHOOLS (SCBN 9990)
   United States Attorney
2

3  BRIAN J. STRETCH (CABN 163973)
   Chief, Criminal Division
4

5  TAREK J. HELOU (CABN 218225)
   Assistant United States Attorney
6
       450 Golden Gate Avenue, Box 36055
7      San Francisco, California  94102
       Telephone:     (415) 436-7071
8      Facsimile:     (415) 436-7234
       Tarek.J.Helou@usdoj.gov
9

10 Attorneys for Plaintiff

11

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15

16 UNITED STATES OF AMERICA,          )   CR No. 07-0653-SI
                                      )
17         Plaintiff,                 )   **UNITED STATES' MEMORANDUM OF**
                                      )   **LAW IN OPPOSITION TO DEFENDANT'S**
18     v.                             )   **MOTION TO DISMISS THE**
                                      )   **INDICTMENT**
19 ABEL LOPEZ-MENERA,                 )
           a/k/a Jose Lopez-Martinez, )
20         a/k/a Bernabe Banderas Lopez, )   Date:   December 20, 2007
                                      )   Time:  10:00 a.m.
21         Defendant.                 )   Judge: The Honorable Susan Illston
   _____   )

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION                                                                      1

II.    BACKGROUND AND STATEMENT OF FACTS                                                 2

       A.    The Defendant Was Deported in 1998 And Waived His                           2
             Right To Appeal His Deportation

       B.    DUI Was An Aggravated Felony When The Defendant                             4
             Was Deported

       C.    The Defendant Reentered The U.S. Illegally in 1999                          4

III.   LEGAL STANDARD                                                                    5

IV.    ARGUMENT                                                                          5

       A.    The Defendant's Deportation Proceeding Was Not                             5
             Fundamentally Unfair Under 8 U.S.C. § 1326(d)(3)

             1.   The Defendant's Deportation Proceeding Did Not                         5
                  Violate His Due Process Rights

             2.   Even If The Defendant's Deportation Proceeding                         8
                  Deprived Him Of Due Process, He Was Not Prejudiced

       B.    The Defendant Did Not Exhaust His Administrative And                        9
             Judicial Remedies Under 8 U.S.C. § 1326(d)(1)-(2)

             1.   The Defendant Validly Waived His Right To Appeal                       9
                  His Deportation

             2.   The Defendant Could Have Pursued The Relief He                         12
                  Requests Through Other, Legal Avenues; Instead, He
                  Challenged His Deportation After Breaking The Law

V.     CONCLUSION                                                                        13

**I.  INTRODUCTION**

On November 8, 2007, a grand jury filed a superseding indictment against Defendant Abel Lopez-Menera, alleging that he illegally reentered the U.S. in violation of 8 U.S.C. § 1326. The defendant moved to dismiss the indictment, claiming that his deportation was unconstitutional and cannot serve as an element of the charged offense because he was not informed that he had the right to depart the country voluntarily.  The defendant is wrong.  His deportation was, and still is, valid.

The defendant's deportation is not invalid because it was not fundamentally unfair: he was not deprived of due process and even if he were, he was not prejudiced.  8 U.S.C. § 1326(d)(3).  The defendant's Motion fails because his due process claim is predicated on applying the law as it stands today to a deportation that took place in 1998, but he cannot apply a change in the law retroactively.  One of the defendant's convictions, for driving under the influence, is not an aggravated felony today, but it was an aggravated felony when he was deported.  That conviction properly barred him from receiving voluntary departure.  8 U.S.C. 1229c(a)(1).  Additionally, even if he had been eligible for voluntary departure, the immigration judge hearing his case was not required to inform him that he could receive it.  Instead, the defendant had to request it, but he did not.  8 C.F.R. § 240.26(b)(1)(i)(A) 1998.

The defendant also cannot show that he was prejudiced by any of the errors that he alleges because he would not have received voluntary departure even if he had been eligible for it.  His expert witness' claim that the defendant had a "right" to voluntary departure is incorrect – voluntary departure is not a "right" in any situation.  In some cases, an immigration judge may exercise discretion and consider the substantive question of whether to grant an alien voluntary departure.  The defendant's deportation was not one of those cases.  Although the INS initially considered deporting the defendant because he had an aggravated felony conviction, the order removing him shows that he was deported only because he was in the U.S. illegally – not because he was an aggravated felon.  The record from his deportation hearing shows that the immigration judge even considered the same factors that he would have considered had the defendant requested voluntary departure, but determined that the defendant was not entitled to

1   any relief.

2       Finally, the defendant waived his right to pursue judicial and administrative remedies.

3   Consequently, he is barred from collaterally attacking his deportation.  8 U.S.C. §

4   1326(d)(1)-(2).

5       The Court need not find that all of the government's arguments are valid.  Any one

6   argument is sufficient by itself to deny the defendant's Motion.

## II.  BACKGROUND AND STATEMENT OF FACTS

**A.    The Defendant Was Deported in 1998 And Waived His Right To Appeal His
        Deportation**

10      The defendant entered the U.S. illegally in 1989.  (Declaration of Elizabeth M. Falk

11  Supp. Mot. Dismiss, Ex. A ("Hr'g Tr.") at 1:05:06.)  In 1993, he was convicted of driving under

12  the influence in violation of California Vehicle Code § 23152(b).  (Declaration of Tarek J. Helou

13  Supp. Gov't Opp. Mot. Dismiss, Ex. A (defendant's criminal history) at AL-000149.)  In 1997,

14  he was convicted of DUI with priors and received a two year state prison sentence.  (*Id.* at AL-

15  000150 – AL-000151.)  While the defendant was in prison, INS issued a warrant for his arrest

16  because he was in the U.S. illegally.  (Helou Decl., Ex. B.)

17      INS issued Notices of Intent to Issue Final Administrative Removal Orders of the

18  defendant on March 4, 1998 (Helou Decl., Ex. C) and June 8, 1998 (Helou Decl., Ex. D).  Both

19  documents stated that the defendant was deportable because he had been convicted of an

20  aggravated felony.  (*Id.*)  Both documents also informed the defendant that he had the right to

21  retain counsel at his deportation hearing, including counsel available from free legal service

22  providers.  (*Id.*)

23      On September 18, 1998, INS issued a Notice to Appear, which the defendant signed,

24  requesting a hearing to contest his deportation.  (Helou Decl., Ex. E.)  By this time, the INS had

25  changed its allegations against the defendant: the Notice to Appear alleged that he was

26  deportable only because he was in the U.S. illegally, not because he had committed an

27  aggravated felony.  (*Id.*)  The defendant signed the Notice to Appear, confirming that he had

28  been informed of his right to appeal an adverse decision and was made aware that relief from

deportation, including voluntary departure, existed for some respondents.  (*Id.* at AL-000038.)

The Notice to Appear also included a list of free legal service providers (*Id.* at AL-000039 – AL-

000043) and detailed instructions in English and Spanish about how to appeal an order of

deportation (*Id.* at AL-000044 – AL-000045).

On September 24, 1998, the defendant had his deportation hearing and the INS ordered

him removed from the country.  (*See* Hr'g Tr.)  The Warrant of Removal/Deportation ordering

the defendant removed from the country shows that he was deported because he was in the U.S.

illegally, not because he had an aggravated felony conviction.  (Helou Decl., Ex. F at AL-

000017.)  The Warning to Alien Removed or Deported states that the defendant was deported

because he was in the U.S. illegally and ineligible to apply for admission to the country for five

years.  (*Id.* at AL-000019.)  The Warning also shows that the defendant was not removed

because he was convicted of an aggravated felony.  (*Id.* (box that would show defendant was

deported because of aggravated felony was left blank).)  If the defendant had been removed

because of an aggravated felony conviction, he would have been ineligible to return forever.

(*Id.*)

The tape of the defendant's deportation hearing confirms that he was deported because he

was in the U.S. illegally and because he had a history of drug use – not because he had

committed an aggravated felony.  Immigration Judge Leary ("IJ") addressed the respondents at

the hearing collectively, and distinguished between those who were lawful permanent residents

and those who were in the U.S. illegally.  (Hr'g Tr. at 2:23, 3:32.)  The IJ informed respondents

who were in the U.S. illegally, like defendant Lopez-Menera, that they could be deported for

having entered the country illegally.  (*Id.* at 2:54.)  He informed the lawful permanent residents

that, by contrast, if they were deported, it would be because they had committed an aggravated

felony.  (*Id.* at 3:32.)  The IJ limited discussion of aggravated felonies to lawful permanent

residents.  (*Id.*)

The IJ asked defendant Lopez-Menera why he was in deportation proceedings.  (Hr'g Tr.

at 1:05:06.)  The defendant stated that he was there because he had drug problems and because

he had driven drunk.  (*Id.*)  The IJ asked him which drugs, the defendant admitted that he used

1    methamphetamine. (*Id.*) The defendant's rap sheet shows that he had been arrested four times

2    for drug offenses by the date of his deportation hearing. (Helou Decl., Ex. A at AL-000146 –

3    AL-000152.) The IJ determined that he was ineligible for any relief because of his drug use.

4    (Hr'g Tr. at 1:05:06.) Although the defendant also admitted to having a DUI conviction, the IJ

5    did not take that into account. (*Id.* (stating that "[t]here is no relief. Because of the drugs.").)

6    The IJ did not address the defendant's DUI conviction and there was no discussion of it being an

7    aggravated felony at the hearing. (*Id.*)

8         The IJ then asked the defendant whether he wanted to appeal the decision deporting him.

9    (*Id.*) The defendant declined and waived his right to appeal. (*Id.*) The IJ had already given the

10   defendant a lengthy explanation of his right to appeal an order deporting him. (*Id.* at 18:09.)

**B.    DUI Was An Aggravated Felony When The Defendant Was Deported**

12        When the defendant was deported, DUI was considered an aggravated felony in the Ninth

13   Circuit. *See, e.g. Rosas-Paniagua v. Reno*, 76 F. Supp. 2d 1060, 1060-61 (N.D. Cal. 1999). The

14   Board of Immigration Appeals also considered DUI an aggravated felony. *See, e.g. In re*

15   *Magallanes-Garcia*, 22 I. & N. Dec. 1, 5 (B.I.A. 1998), 1998 BIA LEXIS 2, at *9-10.

16   Therefore, the was ineligible for voluntary departure at his deportation proceedings. 8 U.S.C. §

17   1299c(a)(1) (1998) (prohibiting voluntary departure for illegal aliens with aggravated felony

18   convictions). Although the Ninth Circuit has held that DUI is no longer considered an

19   aggravated felony, that change did not take effect until several years after the defendant was

20   deported. *See United States v. Portillo-Mendoza*, 273 F.3d 1224, 1226 (9th Cir. 2001).

**C.    The Defendant Reentered The U.S. Illegally in 1999**

22        The defendant returned to the U.S. in 1999. (Hr'g Tr. at 1:05:06.) He reentered the

23   country illegally instead of seeking to have his deportation overturned by either suing the INS

24   from outside the U.S. or by waiting five years and applying for legal admission. (*Id.*) Even

25   though the defendant was arrested and convicted of several crimes over the next few years

26   (Helou Decl. Ex. A at AL-000152-AL-000155), INS and its successors did not learn that he had

27   reentered the country until 2007, when he was serving sentences for annoying and molesting a

28   child and another DUI conviction. (Aff. Cesar Lopez Supp. Criminal Compl., ¶ 6.) The grand

1    jury indicted the defendant on the current illegal reentry charge soon after.  (Superseding

2    Indictment.)

### III.  LEGAL STANDARD

4        Congress has restricted collateral attacks on deportation orders.  To succeed in attacking

5    his 1998 deportation, the defendant must demonstrate that: (1) he exhausted all administrative

6    remedies that may have been available to him to seek relief against the order; (2) his deportation

7    proceeding improperly deprived him of the opportunity for judicial review; and (3) the entry of

8    his deportation order was fundamentally unfair.  8 U.S.C. § 1326(d). To satisfy the third prong

9    and show that his deportation order was fundamentally unfair, the defendant must show that his

10   due process rights were violated by defects in the deportation proceeding and that he suffered

11   prejudice as a result of those defects.  *United States v. Pallares-Galan,* 359 F.3d 1088, 1095 (9th

12   Cir. 2004).  As discussed below, the defendant does not satisfy any of those requirements.

### IV.  ARGUMENT

14   **A.    The Defendant's Deportation Proceeding Was Not Fundamentally Unfair Under 8**
15        **U.S.C. § 1326(d)(3)**

16        **1.    The Defendant's Deportation Proceeding Did Not Violate His Due Process**
17             **Rights**

18             **a.    The Defendant Cannot Pursue A Due Process Claim By Retroactively**
19                  **Applying A Change In Law To His Deportation**

20        DUI was an aggravated felony when the defendant was deported in 1998.  *See*

21   *Rosas-Paniagua v. Reno*, 76 F. Supp. 2d 1060, 1060-61 (N.D. Cal. 1999); *In re*

22   *Magallanes-Garcia*, 22 I. & N. Dec. 1, 5 (B.I.A. 1998), 1998 BIA LEXIS 2, at *9-10.[1]  Aliens

23   convicted of aggravated felonies are ineligible for voluntary departure.  8 U.S.C. § 1229c(a)(1).

24   The defendant claims that his DUI with priors conviction was not an aggravated felony, but

---

26        [1]The Court should give no weight to the declaration submitted by the defendant's expert
27   witness.  The witness bases her opinions on the incorrect legal assertion that the defendant "was
     not convicted of an aggravated felony."  (Falk Decl. Ex. N (Amended Angela M. Bean Decl.), ¶
28   3.)  The Bean Declaration ignores the fundamental fact that DUI was an aggravated felony when
     the defendant was deported.

1    bases that argument on the law as it stood in 2001, not as it stood when he was deported.  (Mot.

2    Dismiss at 3:6-10 (citing *United States v. Portillo-Mendoza,* 273 F.3d 1224 (9th Cir. 2001).)

3    Therefore, even if the defendant was deported because he had committed an aggravated felony,

4    that decision was correct because DUI was an aggravated felony when he was deported.

5         The defendant cannot apply the change in law from *Portillo-Mendoza* retroactively.  The

6    general rule in situations like this one, where the law changes, is to apply changes retroactively

7    only in the case in which the Court announces the new rule and in other cases still open on direct

8    review.  *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993).  This rule applies in criminal

9    and civil proceedings.  *Id.*  Consequently, a change in the law in 2001 does not render the

10   defendant's 1998 deportation "fundamentally unfair" in 2007 because courts should not apply

11   new rules on collateral review of deportations.  *Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169,

12   1172-73 (9th Cir. 2001) (change in law did not invalidate deportation if deportation was lawful

13   when it occurred) (citing *Teague v. Lane*, 489 U.S. 288, 307-08 (plurality)); *see also*

14   *Arreola-Arreola v. Ashcroft*, 383 F.3d 956, 958 (9th Cir. 2004) (rejecting challenge to

15   reinstatement of deportation because removal order was lawful at time petitioner was deported).

16   Because the defendant's deportation proceeding has been closed for nearly ten years, he cannot

17   benefit from the change in law.

18           **b.    The Immigration Judge Was Not Obligated To Tell The Defendant**
                     **Whether He Had The Right To Voluntary Departure – The**
19                   **Defendant Had To Request It**

20           Even if the defendant were eligible for voluntary departure, the IJ did not have to inform

21   him of that right.  Voluntary departure is available under several statutes in the Immigration and

22   Naturalization Act.  The defendant claims he was entitled to voluntary departure under 8 U.S.C.

23   § 1229c(a)(1), which is one of the most restrictive.  (Mot. Dismiss at 5:6-10; Decl. Angela M.

24   Bean, 4.)[2]  Under § 1229c, the IJ could exercise his discretion and consider letting the defendant

25

26   _____

27       [2]As a threshold matter, aliens are not "entitled" to voluntary departure; it is a
     discretionary remedy.  They are, in some instances, entitled to have the IJ consider whether to
28   grant them voluntary departure.  8 U.S.C. § 1229c(a)(1) (Attorney General "may" permit
     voluntary departure).

1    depart voluntarily *only* if the defendant requested voluntary departure at or before his removal

2    hearing.  8 C.F.R. § 240.26(b)(1)(i)(A) 1998; 8 C.F.R. § 240.25(d) 1998.  Consequently, his

3    claim that the IJ had to inform him of this right is incorrect.  (Mot. Dismiss at 6:16-19; Am. Ex.

4    N (Amended Bean Decl.), ¶ 6.)  Thus, defendant Lopez-Menera had to do more than show only

5    (1) that he could pay his way out of the U.S.; (2) that he was not an aggravated felon; and (3)

6    that he had not been granted voluntary departure before.  *Compare* 8 U.S.C. 1229c, *and* 8 C.F.R.

7    § 240.26(b)(1)(i)(A) 1998, *with* Mot. Dismiss at 8:16-19, *and* Bean Decl., ¶ 4.)  The defendant

8    concedes that he did not request voluntary departure.  (Decl. Abel Lopez-Menera Supp. Mot.

9    Dismiss, ¶ 7.)

10          The cases that the defendant relies on to support his claim that the IJ had to inform him of

11   his right to voluntary departure (if he had been eligible for it) are inapplicable because they

12   addressed voluntary departure under different regulations that required the IJ to inform an alien

13   of his right to relief.  For example, in *Duran v. INS*, 756, F.2d 1338 (9th Cir. 1985), the

14   petitioner was deported and moved to reopen the proceeding because the IJ had not informed her

15   that she was eligible for relief.  *Id.* at 1339.  The IJ and the BIA rejected her request.  *Id.*  The

16   Ninth Circuit vacated the BIA's decision, finding that the IJ did not advise the respondent of her

17   right to relief.  *Id.* at 1342.  *Duran*, however, is inapplicable here because the regulation at issue

18   explicitly required the IJ to inform the petitioner if she was eligible for relief.  *Id.* at 1341 (IJ

19   "shall inform the respondent of [her] apparent eligibility to apply for any of the benefits

20   enumerated in this paragraph" (quoting 8 C.F.R. § 242.17(a) (1984))).  The defendant also relies

21   on *United States v. Arce-Hernandez*, 163 F.3d 559 (9th Cir. 1998), but that decision addressed

22   the same regulation that *Duran* addressed and is inapplicable for the same reason.  *Id.* at 563 ("IJ

23   failed to advise [the defendant] of his possible eligibility for relief from deportation, as then

24   required by 8 C.F.R. § 242.17(a).").

25          Although the specific language in *United States v. Arrieta*, 224 F.3d 1076 (9th Cir.

26   2000), which the defendant also cites, takes a broader approach, it also is distinguishable.

27   *Arrieta* addressed voluntary departure under 8 U.S.C. § 1182(h), a different code section

28   enforced through different regulations than defendant Lopez-Menera relies on.  *Id.* at 1079.

1  Although those sections did not require the IJ to inform the defendant of his rights, *Arrieta*

2  should be limited to regulations explicitly requiring IJs to inform an alien of available relief

3  because both cases *Arrieta* cited for authority included that limitation.  The first is

4  *Arce-Hernandez*, discussed above.  *See Arrieta*, 224 F.3d at 1079 (citing *Arce-Hernandez*).  The

5  second is *Moran-Enriquez v. INS*, 884 F.2d 420, which addressed 8 C.F.R. § 242.17(a) (1988),

6  the same regulation at issue in *Arrieta*.  *Id.* at 422.  Furthermore, other courts have attacked

7  *Arrieta's* holding as an overly broad and incorrect extension of *Mendoza-Lopez*, 481 U.S. 828

8  (1987), the seminal case addressing collateral attacks on deportation proceedings.  *See United*

9  *States v. Adame-Salgado*, 214 F. Supp. 2d 853, 863-64 (N.D. Ill. 2002) (rejecting *Arrieta* in

10  favor of other decisions limiting requirement to tell alien of right to relief).

11          **2.**        **Even If The Defendant's Deportation Proceeding Deprived Him Of Due**
12                      **Process, He Was Not Prejudiced**

13          Even if the defendant shows that his removal was unfair, he cannot prevail because he

14  was not prejudiced by the alleged error.  *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197

15  (9th Cir. 1998).  Because the defendant's DUI conviction was an aggravated felony when he was

16  deported, he was ineligible for relief and cannot meet this standard.  Additionally, as the hearing

17  transcript shows, the IJ considered the same factors that he would have considered in

18  determining the defendant's suitability for voluntary departure if the defendant had been eligible

19  for and requested voluntary departure.  The IJ stated that no relief was available because of the

20  defendant's history of drug use.  (Hr'g Tr. at 1:05:06.)  The defendant's DUI arrests and sporadic

21  employment history also would have led the IJ to deny an application for relief (if the defendant

22  had applied for relief and if DUI had not been an aggravated felony barring him from that relief).

23  Courts cannot review such discretionary decisions.  8 U.S.C. § 1252(a)(2)(B)(i).  Consequently,

24  the Court has a record of what the IJ decided and why he decided it, and should give no weight

25  to the defendant's expert witness' opinion that the IJ "might have" given the defendant voluntary

26  departure if he requested it.  (Been Decl., ¶ 8.)

27

28

1

2

**B.    The Defendant Did Not Exhaust His Administrative And Judicial Remedies Under 8 U.S.C. § 1326(d)(1)-(2)**

3

The defendant waived his right to appeal his deportation order after the IJ warned him

4

that such a waiver would prohibit him from challenging the order.  (Hr'g Tr. at 18:09, 1:05:06.)

5

Consequently, the defendant did not exhaust his administrative remedies and was not deprived of

6

judicial review, which prohibits him from collaterally attacking his deportation now.  8 U.S.C. §

7

1326(d)(1)-(2).

8

**1.    The Defendant Validly Waived His Right To Appeal His Deportation**

9

The defendant argues that his appellate waiver was invalid because the IJ did not inform

10

him of his right to depart the country voluntarily.  (Motion at 9:3-10:7.)  As discussed above, this

11

argument fails because the defendant was ineligible for voluntary departure when he was

12

deported and thus cannot attack his deportation by challenging his waiver of a right that he did

13

not have.  This argument also fails for two additional reasons.  First, even if the defendant's

14

waiver of his right to seek relief from deportation was invalid, his waiver of his right to appeal

15

legal issues, including whether DUI should have been classified as an aggravated felony, *was*

16

valid.  Second, the IJ was not required to inform the defendant that he had a right to voluntary

17

departure even if he had such a right.

18

**a.    The Defendant Could Have Appealed The Legal Issue Of Whether DUI Should Have Been Classified As An Aggravated Felony**

19

20

Whether the defendant validly waived his right to seek voluntary departure is a different

21

issue than whether he validly waived his right to seek judicial review of legal questions.

22

Although judicial reviews of final removal orders are limited, courts can review any question of

23

law, including whether DUI should have been classified as an aggravated felony.  8 U.S.C. §

24

1252(a)(2)(D); *see also Ramadan v. Gonzales*, 479 F.3d 646, 649 (9th Cir. 2007) (court has

25

jurisdiction to determine whether jurisdiction exists).

26

The Ninth Circuit has not permitted aliens to attack deportations if they waived appellate

27

rights over avenues for legal relief distinct from administrative relief.  For example, in *United*

28

*States v. Garza-Sanchez*, 217 F.3d 806 (9th Cir. 2000), the Ninth Circuit upheld a deportation,

1   holding that an IJ did not have to inform an alien of possible constitutional challenges or

2   applications of legal precedent to his case even when the IJ was required to inform the alien of

3   rights to relief from deportation.  *Id.* at 810-11, n.6.  The court found that aliens in immigration

4   proceedings are not entitled to the full panoply of substantive and procedural safeguards

5   provided in criminal proceedings.  *Id.* at 810-11.  If a judge need not advise a defendant about

6   legal theories and defenses before accepting a guilty plea in a criminal prosecution, then due

7   process did not require the IJ to so advise defendant Lopez-Menera that he could appeal whether

8   DUI should have been considered an aggravated felony before accepting Lopez-Menera's waiver

9   of appeal in his deportation proceeding.  *Id.* at 811.  If the defendant had appealed whether DUI

10  should have been classified as an aggravated felony, he could have invalidated his deportation

11  and gotten the same relief he requests now.

12              **b.      The Defendant's Waiver Was Knowing Because The IJ Was Not
                            Required To Inform Him Of His Right To Voluntary Departure Even
13                          If He Were Eligible For It**

14          The IJ did not have to inform the defendant whether any right to relief existed.

15  Defendant Lopez-Menera sought voluntary departure under 8 U.S.C. § 1229c(a)(1).  That section

16  did not require the IJ to inform the defendant that he had a right to voluntary departure.  8 C.F.R.

17  § 240.26(b)(1)(i)(A).  Instead, the defendant had to request it, but he did not.  *Id.*  Cases the

18  defendant relies on to claim his waiver was invalid are inapplicable for that reason.  In *United*

19  *States v. Andrade-Partida*, 110 F. Supp. 2d 1260 (N.D. Cal. 2000), the defendant argued that the

20  IJ was required to inform him of his right to depart voluntarily.  *Id.* at 1264.  The court agreed,

21  but only because the regulation in question explicitly placed that burden on the IJ.  *Id.* (citing 8

22  C.F.R. § 240.17(a).)  By contrast, defendant Lopez-Menera bases his claim to voluntary

23  departure on a different regulation which did not require the IJ to inform him if he was entitled to

24  relief from deportation.  *Compare* 8 C.F.R. § 240.26(b)(1)(i)(A) 1998 (requiring respondent to

25  request relief), *with* 8 C.F.R. § 240.17(a) 1996 (requiring IJ to inform alien of available relief).

26  *Andrade-Partida* also distinguished between "statutory" rights to relief and "constitutional"

27  rights to relief, holding that IJs must inform aliens of statutory rights to relief when required to

28  do so, but do not have to inform them of constitutional rights to relief.  *Id.* at 1269 (citing

1    *Garza-Sanchez*).  That comparison is relevant here: even if the IJ had to inform the defendant of

2    a statutory right to voluntary departure, the IJ did not have to inform him of the right to raise the

3    general legal question of whether DUI should have been classified as an aggravated felony.

4            *United States v. Ubaldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2003), which Lopez-Menera

5    cites, is inapplicable because the defendant was never told that he had the right to appeal his

6    removal.  *Id.* at 1049.  Additionally, most of that defendant's hearing was conducted in English

7    and not translated even though the defendant spoke only Spanish.  *Id.* at 1047.  By contrast,

8    defendant Lopez-Menera was informed of his right to appeal his removal and his entire hearing

9    was translated for him to understand.  (Hr'g Tr.)  *Ubaldo-Figueroa* also is inapplicable because

10   the defendant relied on relief available under *INS v. St. Cyr*, 533 U.S. 289 (2001).  *St. Cyr* cases

11   are inapplicable here.  *St. Cyr* granted relief to aliens under INA section 212(c) if their

12   convictions were obtained through plea agreements and if they would have been eligible for

13   relief at the time of their plea agreement under the law then in effect.  *Id.* at 326.  Eliminating

14   relief for aliens who pleaded guilty with the expectation that they would be eligible for relief

15   would have been fundamentally unfair because alien defendants are acutely aware of the

16   immigration consequences of their convictions when deciding whether to plead guilty.

17   *Ubaldo-Figueroa*, 364 F.3d at 1050 (citing *St. Cyr*).  By contrast, in this case, the defendant was

18   not eligible for relief from deportation when he pleaded guilty because DUI was considered an

19   aggravated felony.  If he had been "acutely aware of the immigration consequences" of his plea,

20   he would have expected to be deported.  *See St. Cyr*, 533 U.S. at 322-26.

21           In *Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004), the defendant never stated that he

22   wanted to give up his right to appeal his deportation.  *Id.* at 1097-98.  By contrast, defendant

23   Lopez-Menera did.  (Hr'g Tr. at 1:05:06.)  The IJ in *Pallares-Galan* also actively encouraged the

24   defendant to give up his right to appeal, and did not explain to him the effect of waiving his

25   appeal.  *Id.* at 1098.  Again, by contrast, defendant Lopez-Menera was never pressured to waive

26   his appellate rights and the effect of his doing so was explained to him in great detail.  (Hr'g Tr.

27   at 18:09, 1:05:06.)  Also unlike the defendant in *Pallares-Gallan*, defendant Lopez-Menera had

28   to request relief from deportation.  (8 C.F.R. § 240.26(b)(1)(i)(A) 1998.)

**2.      The Defendant Could Have Pursued The Relief He Requests Through Other, Legal Avenues; Instead, He Challenged His Deportation After Breaking The Law**

Rather than pursuing the remedies he seeks by preserving his appellate rights, the defendant now claims, almost a decade after he was deported, that he is excused from the exhaustion requirement.  (Mot. Dismiss at 9:19-23.)  The purpose of the exhaustion requirement is to require aliens to bring their claims in the immigration courts and in the federal courts before illegally reentering the country.  Instead, the defendant returned illegally and fought his deportation only when he was caught.  His argument renders superfluous the provisions of § 1326(d) regarding deprivation of judicial review and fundamental unfairness, and ignores other avenues of review that were available to him.  While the defendant has a right to fair procedures, he has no right to force the government to re-adjudicate a final removal order by unlawfully reentering the country.  *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 498 (9th Cir. 2007).

The defendant should not have more opportunities to challenge his removal order than a similarly situated alien who was removed from the country, but respected the country's laws and waited patiently outside the borders seeking lawful admission.  *Id.*  The defendant could have waited five years and applied for admission to the U.S.  (Ex. F at AL-000019.)  He also could have sued from outside the U.S. to have his deportation overturned on the same grounds he asserts today.  *Morales-Izquierdo*, 486 U.S. at 498.  If he had prevailed on his claims, the INS would have paroled him into the U.S. so he could litigate his claims in immigration court. *Walters v. Reno*, 145 F.3d 1032, 1050-51 (9th Cir. 1998); *Mendez v. INS*, 563 F.2d 956, 959 (9th Cir. 1977).  Because the defendant has no basis to overturn his deportation, nothing in the Due Process Clause grants him the right to manufacture a new opportunity to raise such a challenge. *Morales-Izquierdo*, 486 U.S. at 498.  Granting the defendant's motion will undermine not only the exhaustion requirement but the criminal scheme enacted in § 1326 itself by allowing him to contest the validity of his deportation after violating § 1326 when he could have contested the issue without committing a crime.

# V.  CONCLUSION

Defendant Abel Lopez-Menera's deportation was valid in 1998, and it is valid in 2007. He cannot challenge his removal from the U.S. nearly a decade after he validly waived his right to appeal it.  He also cannot rely on a change in the law to invalidate his deportation when the IJ correctly applied the law as it stood at the time.  Even if he were able to apply the new law about DUI retroactively and even if he had been entitled to voluntary departure, the IJ was not obligated to tell him of that right – the defendant had to request it, but he did not.  Regardless of whether the defendant was entitled to voluntary departure, there is no indication that he was deprived of that right because the record from his hearing shows that the IJ did not treat the defendant's DUI conviction as an aggravated felony.  The IJ even went through the same analytical process that he would have used to consider whether to grant the defendant voluntary departure.  For the foregoing reasons, the Court should deny the defendant's Motion to Dismiss.


DATED:          December 15, 2007            Respectfully Submitted:

                                             SCOTT N. SCHOOLS
                                             United States Attorney


                                             _____/s/_____
                                             TAREK J. HELOU
                                             Assistant United States Attorney


USA OPP. MOT. DISMISS
CR 07-0653-SI                    13