BARRY J. PORTMAN
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant LOPEZ-MENERA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ABEL LOPEZ-MENERA,<br><br>    Defendant.<br>_____ | No. CR-07-0653 SI<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT**<br><br>Date: December 20, 2007<br>Time: 10:00 a.m.<br>Court: Hon. Susan Illston |

## INTRODUCTION

The government raises four issues in response to Defendant's motion; each of which are either 1) erroneous conclusions of law, 2) in contradiction with Ninth Circuit unpublished caselaw, or 3) incorrectly apply the facts of Mr. Lopez-Menera's situation to firmly established Ninth Circuit precedent. Nothing raised by the government affects the ultimate conclusion that Mr. Lopez-Menera's deportation violated due process and thus, cannot be used as a predicate element to convict him under 8 U.S.C. § 1326. For the reasons stated below, this Court should dismiss the indictment.

## I. THE AGGRAVATED FELONY ISSUE IS A RED HERRING

### A. Mr. Lopez-Menera Was Not Deported as an Aggravated Felon

Mr. Lopez-Menera was not deported as an aggravated felon. *See* Opening Motion, Declaration of Elizabeth M. Falk Authenticating Documents, Exhibit G at AL 36; Exhibit I at AL 19. The government's response flatly ignores this critical fact. Although the Immigration Service initially erroneously charged Mr. Lopez-Menera with deportability based on its earlier belief that he had been conviction of an aggravated felony, it is clear that, at some point, the Service changed its position. *See* Exhibit G at AL 36 (stating that as of September 24, 1998, the grounds for Mr. Lopez-Menera's deportation was being an undocumented alien, not that he had been convicted as an aggravated felon); *see also* Exhibit I at AL 19 (indicating that Mr. Lopez-Menera was not checked off as "permanently excludable" due to any aggravated felony conviction, but instead was only excluded from the United States for a period of five years). These documents are conclusive evidence that at the time Mr. Lopez-Menera was deported, he was not considered, treated as, or deported for being an aggravated felon.

Clearly, the law at the time, as understood by the Immigration Service and the Immigration Judge on September 24, 1998, was that Mr. Lopez-Menera was not an aggravated felon. Had he been ultimately determined to be one, then the Service would have <u>been required</u> to check the last box on Exhibit I, AL 19 (the box warning an alien that he can never return to the United States because he has been convicted of an aggravated felony). Conviction of an aggravated felony is permanent, mandatory exclusion from the United States; INS agents would have had an *obligation* to check the last box on Exhibit I, AL 19 if the Service had determined that Mr. Lopez-Menera was an aggravated felon. This document is the only warning presented to the alien about his continued status for eligibility for admission to the United States; it is used to inform aliens who are permanently excluded that they cannot come back to the United States. Here, the "aggravated felony" box is not checked. As such, the Immigration Service was correct that Mr. Lopez-Menera

REPLY: MOT. TO DISM. INDICT.
No CR-07-0653 SI                                      1

was <u>not</u> an aggravated felon at the time he was deported.

  **B. In 1998, the California DUI Statutes Had Not Been Formally Interpreted by the BIA as Constituting Aggravated Felonies**

  The INS's ultimate position in September, 1998 regarding Mr. Lopez-Menera's conviction as not constituting an aggravated felony was later affirmed by the Ninth Circuit. However, the documented confusion exhibited in Mr. Menera's Notices to Appear over the course of nine months on this issue makes sense, as the law of aggravated felonies and California DUIs was unsettled at the time. Contrary to the government's position, California vehicle code statutes regarding DUIs had not been conclusively determined to be aggravated felonies at the time Mr. Lopez-Menera was deported. Undersigned counsel could not find one BIA decision that interpreted the California DUI statute as an aggravated felony. The case cited by the government, *In re Magallanes-Garcia*, 22 I & N Dec. 1,5 (B.I.A. 1998) is inapplicable, because this case deals with the Arizona state drunk driving statute – not the California statute, which was found to punish negligent conduct and thus, was outside the aggravated felony definition. *See United States v. Trinidad Aquino*, 259 F.3d 1140, 1146-1147 (9th Cir. 2001); see also *United States v. Portillo-Mendoza*, 273 F.3d 1224, 1228 (9th Cir. 2001)("A conviction for DUI, whether with priors or not, contains no intent requirement in California law; a violation may occur through negligence.") Statutes are interpreted by the BIA on a case-by-case basis, as such, the BIA's 1998 interpretation of the Arizona statute, which appears to contain a reckless intent element and not a negligent intent element, is of no relevance here.

  Moreover, it is important to note that in *Portillo-Mendoza*, the Ninth Circuit <u>does not cite a single BIA decision</u> holding that the California DUI statute constitutes an aggravated felony. This decision, which held that the statute at issue in this case – Cal. Veh. Code § 23152(b)) was not an aggravated felony, was in response to district court's mistaken application of the 16 level aggravated felony enhancement at a sentencing under 8 U.S.C. § 1326. *Id.* at 1227-1228. If the government is correct that in *Portillo-Mendoza* the Ninth Circuit was "changing" or overturning a BIA determination that Cal. Veh. Code § 23152 was an aggravated felony, it logically follows that the

REPLY: MOT. TO DISM. INDICT.
No CR-07-0653 SI        2

Ninth Circuit would have cited the BIA decision. By the pure language of the decision, the Ninth Circuit did not find that it was overturning any established BIA precedent. The absence of any such citations suggests that there was no settled BIA or Immigration court law regarding California DUIs as constituting or not constituting aggravated felonies. Similarly, *Trinidad Aquino* does not cite any BIA interpretations of the California DUI statute that the Court was allegedly "overturning." As such, the logical conclusion is that the Ninth Circuit's decisions on these cases were not a "change" on the law, or an "overturning" of the BIA's formal interpretation of the law. The government's contention that the Ninth Circuit in *Portillo-Mendoza* and *Trinidad Aquino* somehow "changed" the law is thus inaccurate. Gov. Oppn. at 6:5. Given the fact that Mr. Lopez-Menera was not deported by the IJ as an aggravated felon and was not found by the IJ to be an aggravated felon, the burden must be on the government to prove that under settled law in 1998, Mr. Lopez-Menera was legally ineligible for voluntary departure based on settled caselaw. As the government has failed to do so, the order and findings of the IJ deporting Mr. Lopez-Menera as an undocumented alien, rather than an aggravated felon controls.

      **C.    On a Collateral Attack, this Court Can Retroactively Apply *United States v. Portillo-Mendoza*'s Rule that Mr. Lopez-Menera was Not an Aggravated Felon in 1998**

The government is further incorrect that this Court cannot retroactively apply the rule of law established in *Portillo-Mendoza* that Mr. Lopez-Menera was not an aggravated felon on a collateral attack. The Ninth Circuit has repeatedly applied new interpretations of law to aliens mounting collateral attacks to their deportations to fight convictions under 8 U.S.C. § 1326. *See United States v. Ubaldo Figueroa* 364 F.3d 1042, 1045-1047 (9th Cir. 2004); *United States v. Leon Paz*, 340 F.3d 1003, 1004-1006 (9th Cir. 2003). Although these cases address lawful permanent residents and an alternate form of relief than voluntary departure (namely, the old INA section 212(c) relief), the principles of these cases apply to Mr. Lopez-Menera's case. Further explanation is thus warranted.

The passage of several laws (AEDPA and IIRIRA) in 1996 and 1997 drastically limited the

relief available to lawful permanent resident and unlawful aliens convicted of aggravated felonies. Most notably, a form of relief for aggravated felon lawful permanent residents under INA 212(c) was eliminated. *See INS v. St. Cyr*, 533 U.S. 289, 298 (2001). After the passage of AEDPA and IIRIRA, immigration judges were confused about whether or not Congress' decision eliminating 212(c) was retroactive, or whether it was still available to aliens whose convictions occurred pre-AEDPA, but their deportation proceedings were taking place post-AEDPA. The BIA settled this controversy in *In re Soriano*, 21 I. & N. Dec. 516 (BIA 1996)(en banc) by holding that the broad elimination of 212(c) relief was retroactive. Because the BIA's decision was binding on all immigration judges post-*Soriano*, the judges accordingly lawfully denied 212(c) relief to any lawful resident who petitioned post-AEDPA between 1996 and 2001. *See* 8 U.S.C. § 1003.1(g).

In *St. Cyr*, the Supreme Court essentially overturned the *Soriano* decision by interpreting AEDPA and IIRIRA as not applying retroactively to lawful permanent residents convicted of aggravated felonies pre-AEDPA. *See United States v. Ortega-Ascanio*, 376 F.3d 879, 881-882 (9th Cir. 2004)(interpreting the *St. Cyr* decision). After *St. Cyr*, aliens facing deportation hearings today who have been convicted of aggravated felonies pre-AEDPA can still apply for section 212(c) relief. *St. Cyr*. confirmed that hundreds of lawful permanent residents had been improperly deported in the Ninth Circuit under the rule of *Soriano* between 1996 and 2001, as *St. Cyr* held that the BIA had improperly interpreted AEDPA and IIRIRA as applying retroactively.

Although those aliens who were improperly deported between 1996 and 2001 have not been permitted to re-open their deportation proceedings, they have been permitted to mount collateral attack challenges to their deportation proceedings when charged with 8 U.S.C. § 1326. *See Ubaldo-Figueroa*, 362 F.3d at 1045-1047; *Leon Paz*, 340 F.3d at 1004-1006. In these cases, the Ninth Circuit has applied the interpretation of AEDPA announced in *St. Cyr* in 2001 to find that the defendants at issue were unlawfully denied their opportunity to apply for section 212(c) post-AEDPA as early as 1996. *Id.* The Ninth Circuit has so held, despite the fact that at the time of the actual deportations at

issue, the Immigration Judges in *Ubaldo-Figueroa* and *Leon Paz* were properly following the BIA's precedent set in *Soriano* by informing the aliens that they had no right to relief at all. *Id*. [1] The Ninth Circuit in these cases accordingly applied the holding of *St. Cyr* retroactively to allow defendants to mount collateral attacks to their deportations, regardless of the fact that elimination of 212(c) relief was an established BIA decision and, at the time, was valid law.

     The principles of *Ubaldo Figueroa* and *Leon Paz* must also apply to Mr. Lopez-Menera in the instant case. The basic premise of these cases cited above is that a deportation cannot be used as a predicate element of a criminal offense if the deportation did not comport with due process, and Immigration judges failing to explain, or misinforming aliens of their right to 212(c) relief post-AEDPA is a due process violation, regardless of the fact that the IJ at issue could not have foreshadowed the Supreme Court's decision in *St. Cyr* overturning *Soriano*. Here, an analogous situation applies. Assuming *arguendo* that 1) the government is correct (which it is not) that in 1998, the BIA had officially interpreted California Vehicle Code Section 21252(b) as constituting an aggravated felony, and assuming *arguendo* 2) that the government is correct (which it is not, as the paper record clearly demonstrates) that Mr. Lopez-Menera was deported as an aggravated felon, that decision was erroneous as a matter of law. *See Portillo-Mendoza,* 273 F.3d at 1228. Mr. Lopez-Menera was thus not lawfully deportable as an aggravated felon, and was eligible in 1998 for pre-hearing voluntary departure. Just as the Ninth Circuit has retroactively applied *St. Cyr* to the cases of aliens who were misinformed by Immigration Judges about the possibility of 212(c) relief, this Court must retroactively apply the interpretation of the Ninth Circuit in *Portillo-Mendoza* to find that Mr.

---

[1] The Ninth Circuit and district courts following Ninth Circuit precedent have repeatedly granted collateral attacks mounted by aliens in 8 U.S.C. § 1326 cases, despite the inapposite *Alvarenga-Villalobos v. Ashcroft* decision, 271 F.3d 1169 (9th Cir. 2001), which directly conflicts with *St. Cyr* and does not cite *St. Cyr*. *See, e.g., United States v. Lopez-Hernandez*, 2007 U.S.Dist LEXIS 16251 at 24-25 (N.D. CA February 28, 2007)(Alsup, J.)(flatly rejecting the government's reliance on *Alvarenga-Villalobos* when granting defendant's collateral attack at *St. Cyr* grounds)(also available on the Northern District Docket, Case No 06-645 WHA, Docket Entry 40.) The government's arguments regarding non-retroactivity on these grounds should be similarly disregarded by this Court.

REPLY: MOT. TO DISM. INDICT.
No CR-07-0653 SI                                             5

Lopez-Menera was not an aggravated felon at the time of his deportation, and was thus unlawfully and incorrectly misinformed by the IJ that he was ineligible for voluntary departure.

### B. UNDER NINTH CIRCUIT PRECEDENT, THE IJ WAS REQUIRED TO INFORM MR. LOPEZ-MENERA ABOUT PRE-HEARING VOLUNTARY DEPARTURE, BECAUSE HE WAS ELIGIBLE FOR SUCH RELIEF

The government is utterly incorrect that Mr. Lopez-Menera cannot mount a collateral attack on his deportation as a matter of law because "the IJ was not obligated to tell the defendant whether he had the right to voluntary-departure." Gov. Oppn. at 6: 20-21. This argument flies in the face of Ninth Circuit unpublished caselaw. *See, e.g, United States v. Basulto-Pulido*, 219 Fed. Appx. 717, 719 (9th Cir. 2007)(district court erred in denying motion to dismiss indictment, because IJ failed to advise defendant about right to voluntary departure; reversing district court's denial of motion) (attached herein as Exhibit A, pursuant to Federal Rule of Appellate Procedure 32.1); *United States v. Nungaray Rubalcaba*, 228 Fed. Appx. 436, 438 (9th Cir. 2007)(district court erred in denying motion to dismiss indictment, because IJ failed to advise defendant about his eligibility for voluntary departure; reversing district court's denial of motion)(attached as Exhibit B); *United States v. Alonza-Mendoza*, 239 Fed. Appx. 330 (9th Cir. 2007)(holding that defendant's due process rights were violated when the IJ did not individually inform him of his right to fast-track voluntary departure under 8 U.S.C. § 1229c(a) and his right to appeal)(attached hereto as Exhibit C).

The government's argument that Mr. Lopez-Menera was not entitled to be advised of his right to relief from deportation as a matter of law should accordingly be disregarded by this Court, as abundant Ninth Circuit precedent exists to the contrary. *See also United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1052 (9th Cir. 2003)("The duty of the IJ to inform an alien of eligibility for relief is mandatory, and the failure to do so constitutes a violation of the alien's due process rights.")

\\
\\

### C.   MR. LOPEZ-MENERA MEETS ALL THE REQUIREMENTS OF A COLLATERAL ATTACK

1.   **The Exhaustion and Deprivation Requirements, 8 U.S.C. § 1326 (d)1-2**

The government oddly challenges Mr. Lopez-Menera's waiver of appeal as valid, despite the well-established legal principle in the Ninth Circuit that waivers of appeal of an IJ's order must be "considered and intelligent". Gov. Oppn. at 9:9-17; *Ubaldo-Figueroa*, 364 F.3d at 1048. The government's challenge in this vein fail, because Mr. Lopez-Menera's waiver was not "considered and intelligent". As previously stated, the record indicates that Mr. Lopez-Menera was not deported as a result of any aggravated felonies, but because he was an undocumented alien. The IJ never once informed Mr. Lopez-Menera that he was an aggravated felon. Moreover, it is clear that at the time of his deportation, Mr. Lopez-Menera was not convicted of an aggravated felony as interpreted by the Ninth Circuit. Thus, the IJ had an obligation to inform Mr. Lopez-Menera about his right to voluntary departure. At the very least, the IJ had an obligation to accurately review the record and not overtly misinform Mr. Lopez-Menera that 1) he was ineligible for voluntary departure, and 2) that "there is no relief because of the drugs" when Mr. Lopez-Menera had never been convicted of possessing drugs! *See* Transcript of Hearing, Falk Declaration at Exhibit A (end of hearing).

Here, as in *Basulto-Pulido*, "it is [thus] uncontested that [Lopez-Menera] was statutorily eligible for pre-hearing voluntary departure when he appeared before the IJ, [but] []he did not explain what pre-hearing voluntary departure was, nor did []he provide him with the opportunity to apply for it. Consequently, [Lopez-Menera's] waiver of his appeal was not considered and intelligent, and was therefore invalid. The exhaustion and deprivation requirements of § 1326(d) are therefore satisfied" *Basulto-Pulido*, 219 Fed. Appx. at 719; *see also Ningaray-Rubalcaba*, 229 Fed. Appx. at 438 (the exhaustion and deprivation requirements of § 1326(d)(1) and (d)(2) are satisfied on a collateral attack once it becomes apparent from the record that the alien/defendant was not advised of possible eligibility for relief from deportation). Mr. Lopez-Menera accordingly meets the first two prongs of a

valid collateral attack.

### 2. Prejudice

Under the caselaw cited above, Mr. Lopez-Menera similarly meets the "prejudice prong" of a successful collateral attack under 8 U.S.C. § 1326(d)(3). To meet the requirement of 8 U.S.C. § 1326(d)(3) that "the entry of the order was fundamentally unfair", Mr. Lopez-Menera must satisfy this Court that he was prejudiced by the IJ's erroneous advice. *See Basulto-Pulido*, 219 Fed. Appx. at 718 (citing *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1203-1204 (9th Cir. 2004)). To prove prejudice, an "alien does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." *See Ubaldo-Figueroa*, 364 F.2d at 1050 (quoting *Arrieta*, 224 F.3d at 1079.) An alien can show prejudice by showing one plausible legal challenge to his removal order that he could have pursued had he known that he had the right to appeal. *Id.*

"Once the defendant makes a prima facie showing of prejudice, the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome." *Nungaray-Rubalcaba*, 229 Fed. Appx. at 439 (citing *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003)). As noted by the *Nungaray-Rubalcaba* court, "Immigration Judges have 'broad authority to grant [pre-hearing] voluntary departure" (citing *In re Eloy Arguelles-Campos*, 22 I & N Dec. 811, 820 (BIA 1999). Here, Mr. Lopez-Menera's circumstances in 1998 demonstrate that it was more than plausible that he would have obtained voluntary departure as of September 24, 1998 had he known about that form of relief and applied for it. *See* Declaration of Elizabeth M. Falk Authenticating Documents at Exhibit N; (Bean Dec. at § 8).

Primarily, Mr. Lopez-Menera has shown that he had the financial resources to finance his trip out of the United States in 1998, which is one of the criteria of voluntary departure. *See* Declaration of Elizabeth M. Falk Authenticating Documents at Exhibit M (Dietz Dec. at ¶ 7-8; *see also* Bean Dec., Ex. N at ¶ 4.) Importantly, Mr. Lopez also had a U.S. citizen wife and three children who were

REPLY: MOT. TO DISM. INDICT.
No CR-07-0653 SI                                    8

1  United States citizen in 1998; facts that were known to the IJ and the Immigration Service at the time
2  of Mr. Lopez-Menera's deportation. *See* Falk Dec, Exhibit H, AL 187 (INS Service Agent notes of
3  "3 U.S.C. child"); Falk Dec. Exhibit L, Lopez-Menera Dec. at ¶ 3. The "family" factor was
4  particularly compelling to the Ninth Circuit in *Basulto-Pulido*, where the Court found that Mr.
5  Basulto-Pulido had a plausible claim for pre-hearing voluntary departure due to his "common-law
6  marriage to a U.S. citizen and his three U.S. citizen children." 219 Fed. Appx. at 719, n. 1. If the
7  "family" factor alone encouraged the Ninth Circuit to reverse the district court's denial of *Basulto-*
8  *Pulido*'s motion to dismiss, here Mr. Lopez-Menera has exceeded the showing – he has also
9  submitted declarations that he had the financial means to depart the country through the declaration of
10 Sally Dietz. He has additionally submitted the declaration of an Immigration law expert who has
11 determined that his claim for pre-hearing voluntary departure was plausible. *See* Bean Dec. at ¶ 8.
12      At minimum, Mr. Lopez-Menera has made a prima facie showing of prejudice through the
13 submitted declarations. The burden then shifts to the government to make a valid argument that the
14 IJ's failure to correctly advise Mr. Lopez-Menera about pre-hearing voluntary departure did not affect
15 the proceedings. *Nungaray-Rubalcaba*, 229 Fed. Appx. at 439. The government has failed to meet
16 that burden here. In opposing the prejudice prong, the government weakly contends, absent support,
17 that "the defendant's DUI arrests and sporadic employment history" would have led the IJ to deny an
18 application for relief, as well as his "drug use". Gov. Oppn. at 8:20-21. This ignores Mr. Lopez-
19 Menera's strong family ties, his own statements that he worked consistently, as well as Ninth Circuit
20 caselaw on point determining than such arguments on the part of the government are insufficient. *See*
21 *Nungaray-Rubalca*, 229 Fed. Appx. at 439 (government's arguments that "no IJ would have allowed
22 the defendant to depart voluntarily as a discretionary matter" need to be proven, and cannot simply be
23 alleged.)
24      The government's additional argument that the IJ made a finding against Mr. Lopez-Menera
25 on the voluntary departure issue is utterly unsupported by the record. Gov. Oppn. at 8:24-26.
26

REPLY: MOT. TO DISM. INDICT.
No CR-07-0653 SI                           9

Clearly, when the IJ informed Mr. Lopez-Menera that "there was no relief because of the drugs" it was at a point in the hearing long after the IJ made the erroneous, blanket statement to all the aliens at the hearing that "none of you are eligible for voluntary departure" *See* Transcript of Hearing, Falk Declaration at Exhibit A (p. 3)(bolded). The IJ's determination regarding voluntary departure was not particularized as to Mr. Lopez-Menera; it was stated as a group determination, without any consideration of Mr. Lopez-Menera's individualized factors. *Id.*

If anything, the IJ's erroneous comment that "there is no relief for you because of the drugs" exemplifies the poor nature of this deportation hearing. In disregard of the evidence before the Court, the IJ in this matter told Mr. Lopez-Menera that there was no relief from deportation due to a conviction that he had never suffered. It is clear that the IJ at issue was not paying particularized attention to individual aliens appearing before the Court at this hearing, nor that the IJ was particularly familiar with their records and documentation. This "group" approach to deportation hearings is the type of corner-cutting that the Supreme Court found problematic in *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). This Court should not consider the IJ's offhanded, incorrect comment "because of the drugs" as any weighted characterization or decision regarding Mr. Lopez-Menera's candidacy for voluntary departure.

Although the Ninth Circuit has found that criminal history can disqualify an alien from obtaining voluntary departure, the only example located by undersigned counsel is a defendant alien who "had been convicted of a gang-related murder and served six years in juvenile detention just prior to his 1997 deportation hearing. He had also earlier been arrested for weapons possession, attempted grand auto theft, grand theft auto, and assault with a deadly weapon." *Alonza-Mendoza*, 239 Fed. Appx. at 332. Here, in contrast, Mr. Lopez-Menera had only been convicted of DUIs. Quite simply, Mr. Lopez-Menera's criminal history pales in comparison to Alonza-Mendoza's. When "taking into account the low threshold for receiving fast-track voluntary departure", *id.*, Mr. Lopez-Menera's ties to a U.S. citizen wife and three U.S. citizen children, access to funds to depart the country and

No CR-07-0653 SI                                            10

possibly make bail, expert declaration support, and lack of violent record more than meets the weak "plausibility" standard necessary to establish prejudice. The government has produced no caselaw or factual evidence to the contrary. Accordingly, the indictment must be dismissed.

## CONCLUSION

For the aforementioned reasons, Mr. Lopez-Menera respectfully requests this Court to dismiss the indictment in the instant case.

Dated: December 18, 2007

                    Respectfully submitted,
                    BARRY J. PORTMAN
                    Federal Public Defender

                    /S/

                    ELIZABETH M. FALK
                    Assistant Federal Public Defender